Good afternoon. May it please the court, counsel. My name is Robert Wepner, and I represent Mr. Jackson. This is an appeal on a criminal case that raises essentially two issues. On June 3rd of 2011, Mr. Jackson pleaded guilty straight up to one count of sex trafficking, and that same day he was sentenced to 40 years in prison. A threshold question that was raised by the government in its response is whether the court should even address the violation of Mr. Jackson's speedy trial rights. The government would instead have this court accept on this record that this was a knowing and intelligent, unconditional plea, and that as such it bars this court from considering the speedy trial right violation. But the record suggests otherwise. Even though it is ordinarily the case, as the government pointed out, that when there is not compliance with Criminal Rule 11A2's provision for a conditional plea, an attempt to raise an issue on appeal would be unavailing, and it should ordinarily be dismissed. But both because of who Mr. Jackson is and was and what the record does and does not show about his understanding of his right to appeal or lack thereof, this is not the usual case. Ginsburg. So is counsel suggesting that the plea was not knowingly and intelligently or that the defendant did not knowingly and intelligently waive his constitutional rights, and so that's an attack on the plea itself? I'm suggesting that the record does not show that he did. The record shows that. What do you think is missing? So I was just reviewing the record this morning, the taking of the plea and the questions that were asked by the trial judge and so forth. So what's missing? Right. Well, the record of the plea proceeding, the transcripts of the colloquy between the court and counsel and so forth, and the plea petition itself say absolutely nothing about whether Mr. Jackson has or does not have any kind of right to an appeal. The only thing that's ever said about his right to appeal is after he has entered his plea and been sentenced, and the court just says, you have a right to appeal this sentence under certain circumstances, whatever that means. Mr. Jackson – whatever it meant to Mr. Jackson, I should say. We all know what it means. But to Mr. Jackson, who has an IQ of 68, which is the bottom end of borderline intellectual functioning, it may not have been so clear. But the trial judge, of course, did inquire of counsel about the defendant's competency, since he had been previously determined not to be competent. Sure. In this case, the defendant had been found to be incompetent earlier, and trial judge counsel represented to the court at the plea hearing that he believed the defendant had been restored to competency. And there was a hearing-ray restoration of competency that was conducted at some time prior to taking up the plea, correct? Right. That's true. And I'm – I don't think I'm splitting errors when I say that the general question of his ability to understand proceedings and to assist his attorney on an ongoing basis may be different from his mental state at any given time under any circumstances regarding any particular facts, those facts in this case being what his right to appeal may or may not have been. Well, in fact, he has appealed, and the appeal's been allowed, so no foul. I beg your pardon? So there's been no foul since he has been allowed to appeal and has appealed. That's correct. He's filed an appeal, but the government has raised the question whether or not this Court should even consider the issue of the violation of his speedy rights under the Speedy Trial Act, and I'm just addressing that as a threshold matter because I assume the Court would want to be interested to hear it. In short, on the date of his plea and plea petition, Mr. Jackson not only said that he was at that point suffering from depression and anxiety, other mental problems and pain. Among those mental problems might well have been schizophrenia because that's what one of his medications is supposed to treat. That's the Risperdal. And the plea petition said, I haven't been taking any medications except for the following, and there's a salad of powerful drugs that he was on at the time that include such side effects as anxiety, agitation, drowsiness, confusion, dizziness, hallucinations, depression, lightheadedness, seizures, and headaches. And he was taking all of these at the same time. So when you look at his baseline mental abilities, his pain that he was in, and the fact that he was on all these drugs, it should give the Court pause at accepting, you know, wholesale the various boilerplate recitations in the plea petition form. I mean, when the defendant says, I am not under the influence of drugs, I mean, does he have a medical degree? Does he know what his competency, I don't mean competency, but what his ability is at that time to understand the situation? And so I think what counsel is suggesting, because the trial judge didn't make inquiry or advise the defendant, better advise the defendant of his right to appeal from the ruling of the motion to dismiss in violation of the Speedy Trial Act, that this Court should not then conclude, as the government's counsel would suggest, that he waived that issue. Is that where you're going? Proper waiver is, of course, the intentional relinquishment or abandonment of a known right. And there's nothing in this record that suggests that he knew anything about what his right to appeal would have been. There's no indication that he ever even knew that he might have been able to approach a conditional plea with the government counsel. It says nothing about it. The prosecutor says nothing about it. It, it, it. But I think what you're saying is where that takes us is this Court should not conclude, as the government's counsel suggests, that he waived the right to have this Court hear the dismissal of the violation of the Speedy Trial Act. Right. I do not think the record shows that he waived that. Okay. And Giacobbo Castillo and Lopez Almendara, which are two of the cases most relied upon by the government, both indicate that he can always attack the knowing and intelligent and voluntary nature of, of his plea, even, even an unconditional plea. Perhaps legally the most interesting issue in the case, at least to me, is the interplay within the Speedy Trial Act between what kinds of delays are excludable delay. The trial court found that after he had been, the court had verbally ordered transport for mental evaluation and treatment on March 1st. Some 120, 130 days went by before he finally got to, got to Springfield Medical Center. And there are two different provisions that are at war in the statute regarding delays like that. One is a general provision that talks about delays that result from a defendant's incompetency. And the other has to do specifically with transportation delays, in which any delay over 10 days is, is rebuttably presumed to be unreasonable. And there's no competent evidence in the record as to why it took so long to get him to Springfield. In fact, when he filed his motion to dismiss on July 15th, presto, he was in Springfield six days later. So the inescapable inference from that record is that the government didn't really care about the delay in his case. The trial court used the general, the general H-4, I believe it is. Ginsburg. Yes, the statute that would indicate excludable time because of one being found to be mentally incompetent to stand trial. Right. But the court referred to delays that were associated with the incompetency. But the statutory language is resulting from the incompetency. And to say any delay associated with the incompetency simply swallows up the specific provisions of the transportation part of the statute. And it means that if anything is associated, whatever that means, with an incompetency finding, then nothing really matters anymore in terms of the Speedy Trial Act except the lengths of time for evaluation which can be extended. I'd like to reserve a minute for rebuttal, if possible. Okay. You did not discuss at all the sentencing issues, and I don't know if you intended to discuss that or not. Well, I had intended to, but it doesn't look like I would have time. All right. We'll hear from the government. May it please the Court. Kelly Zusman, appearing on behalf of the United States. Your Honor, the threshold issue before I believe this Court can reach the question of whether or not the Speedy Trial Act was violated was whether or not Mr. Jackson's unconditional guilty plea effectively waived that right. Now, there would be little incentive for defendants and their attorneys to comply with the unambiguous language of Rule 11A2, which states that if a defendant wishes to reserve his right to appeal any issue, any antecedent issue, before his entry of a guilty plea, he must do so in writing and with the permission of the Court and the government. That didn't happen here. And we know from this Court's decisions in Lopez-Armenta and United States v. Barr that claims under the Speedy Trial Act are waived with the entry of an unconditional guilty plea. If I may then turn to the question of the sentencing, the only issue raised with respect to the sentencing is the two-level increase for use of a computer. Judge Mosman, applying the plain language of the guideline here, held that because Mr. Jackson advertised this 15-year-old victim on Craigslist, that satisfied that element of the guideline. There was no dispute that, in fact, the girl was posted in an advertisement on Craigslist. The only objection that Mr. Jackson raised at the time of the sentencing was because he himself wasn't the one who actually posted the advertisement, because that was undertaken by two of his co-defendants, that he shouldn't be held responsible for that. In fact, Judge Mosman said that because this was jointly undertaking criminal activity, that enhancement was, in fact, appropriate. Ginsburg. Ordinarily, we think when the increase for using the computer is allowed that it's been used to solicit the individual, and it wasn't really used to solicit AK at all. That's correct. The computer here was not used to solicit AK. It was used to solicit customers who would then buy AK's services. And this particular guideline includes two different ways that this guideline can be appropriate, because it's stated in the conjunctive. And that is that if the offense involved the use of a computer, which no doubt it did here, either to persuade or induce the minor to engage in these activities, or the separate provision that we're relying upon to entice, encourage, offer, or solicit a minor. So that's the clause that applies here and formed the basis for the district court's conclusion that the two-level increase was appropriate. Of course, the commentary would suggest otherwise. The application note 4 does state that it is intended to apply where there is communication with either the minor or the minor's custodian. But our position is that where the plain language of the guideline is inconsistent with the application note, it's the plain language of the guideline that controls. That application note clearly has relevance to the first prong, where someone is trying to entice the minor. But it also just as clearly has no relevance to the second prong, where someone is attempting to solicit people to then engage in sexual activity with the minor. In addition, I would also note something that wasn't raised in my brief, but is an important point. You'll see from reading the pre-sentence report that Mr. Jackson also qualified as a career offender. His guideline range for the sex offense was an offense level 38 with a criminal history category of 6, which yields a 38. Ginsburg. Are you suggesting that the Court then calculated the sentence based upon his being a career offender? No. What I'm getting to is his guideline range based upon the sex offense was a 38 category 6, which yielded a range of 360 months to life. Now, even if we take the two-level enhancement for use of a computer out of the equation, so then it would be a level 36 category 6, the career offender would then come into play, because under the career offender guideline, he was an offense level 37 category 6, which yielded the exact same range as what he was sentenced to, which would be a 360 month to life sentence. So my only point is, is that even if we were to take the two-level computer increase out, it would not lower his advisory guideline range. Because if we take the two-level computer enhancement out, then the career offender is the higher guideline. So then he would be a level 37 category 6. His sentencing range would be precisely the same, 360 months to life. But the trial judge did not sentence using the career offender guideline. That's correct. That's correct. That's because the sex offense yielded a higher guideline range. So it trumped career offender. But in any event, he would still be either if we use career offender or if we use the guideline range that the Court used here based upon the sex offense, the guideline range is the same, 360 to life. So is it your argument then there was no error? My argument is that any error would be harmless because it would not have affected the applicable guideline range. So what's the standard of review on this issue as you see it? The standard of review on the application of the guideline. Fact findings are reviewed for clear error. Mr. Jackson challenged factually whether or not it was appropriate to apply this enhancement. Interpretation of the guideline is reviewed de novo. Unless the Court has further questions. Well, getting back to the Speedy Trial Act, if we were to find that there was a violation of the Speedy Trial Act, what are the consequences? If there's a violation of the Speedy Trial Act, then the indictment would be dismissed. And then the district court would have to determine whether or not that dismissal would be with prejudice or without prejudice. And we don't determine whether it would be with or without. That goes back to the trial court. That's correct. And if the trial court then found that there was a violation of the Speedy Trial Act, dismissed the indictment without prejudice, then the government gets the opportunity to refile, and then the process just starts all over again. That's correct. And we would do so in this case, given the egregiousness of the offense conduct. Unless there are further questions, the government would submit. The thing that is kind of un-understandable and troubling is that he just made an open plea without any attempt to negotiate anything with the government, and quite understandably because of the nature of the crimes, the government just tossed the book at him. Well, as I understand, there were early plea negotiations that were rejected, and this plea came right on the eve of trial, which is why the government didn't ask for the additional three points for acceptance of responsibility. So yes, Mr. Jackson, if he went to trial, was facing a strong potential of a life sentence. He avoided that by entering a guilty plea. The record doesn't seem to reflect whether or not there were stipulations to exclude time pursuant to the Speedy Trial Act when the trial was continued, and maybe that happened, but just not a part of this record. But I was curious as to whether or not there was a finding by the court, ray excludable time, because of the incompetency to stand trial. Not that I'm aware of. The district court did, in fact, enter an order denying the motion to dismiss on speedy trial grounds. That's at Excerpt of Record 16, in which he specifically cites 3161H4 as the basis for his denial of that motion. But I'm not aware of any specific findings regarding excludable delay. Because typically that would be the case when the trial is continued or in an example of this type where we have a defendant found to be not competent to stand trial that there would be some findings made excluding time. But we don't have anything in the record here to indicate that there were ever such findings. That's correct. And I believe Judge Mossman was, in fact, relying upon the statute, 3161H4, for the delays in the trial that were attendant to Mr. Jackson's incompetency. There were other continuances here. I think the defense filed three motions for continuances that were granted, and there were speedy trial findings relative to those. And when does the time begin to run when a defendant is found not competent to stand trial? Is it, in this case, when the motion was filed by the defense counsel or when the court actually made a finding, Ray, not competent to stand trial? I think that once the motion is filed, there's a separate provision of the Speedy Trial Act that would toll the clock for a pending motion. I think the clock would be tolled for purposes of H4 once Judge Mossman actually finds him incompetent. And here, that was on March 1st of, I believe it was, 2011. Then he is sent to the Federal Medical Center. He's returned to the court on December 14th of 2011, and it was during that hearing, which was a review of the competency determination that had been made by the Federal Medical Center, that then Judge Mossman set a new trial date. After finding that competency had been restored? Correct. Anything else? Thank you. Thank you, Your Honor. To discuss briefly the computer enhancement. In their brief at page 15, the United States says that there, quote, was no dispute that the defendant directed others to place the online advertisement for AK, unquote. But that is and was in dispute if you read counsel's letter to the probation officer attached as an exhibit to the PSR. He disputed that Mr. Jackson had placed the ad, that it was his idea. In fact, the victim told the authorities that it was done with the direction of the co-defendant. There's really no indication that Mr. Jackson himself had anything to do with the placement of that ad, except that he benefited from it. Did counsel raise at the trial court the sentencing error that you're raising now before this court? It seems to me it was a different issue. He challenged the applicability of the computer enhancement to his client. But the error cited here on appeal is the fact that the enhancement was, in fact, included in the sentence when it was not the defendant who communicated with the minor. Well, those are points that I am making. I would want to go on to make one other point about that, about the sentencing guidelines. I don't see a conflict between the guidelines and the advisory note. The note makes clear that it applies only where the computer is used to communicate with the minor or the minor's custodial person. And it would seem to be that under A, if the communications are to the minor or the custodian to persuade, entice, coerce or facilitate the travel of the minor and the minor or the custodian are involved in the communications, or under B, between the minor and the custodian and some person to entice, encourage, offer or solicit that person to use the services of the minor. So the guideline note really applies to both A and B, I think. And in this case, it doesn't fit the facts. In this case, the enhancement was not proper. And what do you think the standard of review is for this Court? What's the standard? Yes, on the sentencing issue. I believe it's clear error. Clear error because? I'm sorry? Why? Why? Why clear error? It's clear error because the case, the only appellate case law that I'm aware of on this statute, on the applicability of this guideline, which is on virtually identical facts to this case, makes it clear that this was not a proper use of the guideline. That would be my argument. Thank you very much. Thank you. And the matter is submitted. The Court will recess. All rise.
judges: Marshall, Fletcher, Pregerson